**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re *Ex Parte* Application of Nebahat Evyap İşbilen, pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings,<br><br>Petitioner. | Misc. Case No. M-_____ |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................12

      I.      PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28
            U.S.C. § 1782 ...........................................................................................................12

      II.     THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER ....13

      III.    THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX
            PARTE*..............................................................................................................15

CONCLUSION...................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
  785 F. Supp.2d 434 (S.D.N.Y. 2011)......................................................................15

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006).................................14

*In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant
  to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
  No. 13 Misc. 397(PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014)................................15

*In re Application of Hornbeam Corp.*,
  No. 14 Misc. 424 (VSB), 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ...............................15

*Brandi-Dohrn v. 1KB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012).........................................................................13, 14

*In re Chevron Corp.*,
  No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010) (Dkt. 2) ..................................................16

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995).......................................................................14, 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).................................................................................13, 14

*Lancaster Factoring Co. Ltd. v. Mangone.*
  90 F.3d 38 (2d Cir. 1996)................................................................................12

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
  376 F.3d 79 (2d Cir. 2004)..............................................................................13

**Statutes**

28 U.S.C. § 1782................................................................................... *passim*

Petitioner, Nebahat Evyap İşbilen ("**Mrs. İşbilen**" or "**Petitioner**"), a Turkish national resident in the United Kingdom, respectfully submits this memorandum of law in support of her application for an order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in aid of a foreign proceeding.

## **INTRODUCTION**

Petitioner is a victim of a multinational fraud committed against her by Mr. Selman Turk and his agents and/or associates.  (Declaration of Jonathan Tickner dated February 22, 2022 ("**Tickner Declaration**" at ¶ 6.)  The fraud involves misappropriated funds relating to certain monies that, from June 2015, Mrs. İşbilen obtained when she realized her interest in certain of her family's companies as part of a share buyback agreement for a total consideration of US$90 million.  (*Id.* at ¶ 10.)  US$87.5 million of this sum was delivered in 35 promissory notes each worth US$2.5 million (the "**Promissory Notes**").  (*Id.*)

In March 2021, Mrs. İşbilen brought a civil claim (Claim No. BL-2021-000365) in the High Court of Justice of England and Wales (the "**High Court**"), against Mr. Turk, whom she alleges took effective control of at least US$87.5 million of her personal funds between 2016 and 2020 (the "**English Proceedings**").  Mrs. İşbilen alleges in the English Proceedings that Mr. Turk dishonestly and systematically abused the trust that she placed in him, and breached the fiduciary obligations that he owed her, through numerous dealings with those assets (alternatively, that he dishonestly or unconscionably induced her to sign documents purporting to execute a large number of agreements and transactions) from which she has suffered substantial losses.  The total value of Mrs. İşbilen's claims against Mr. Turk, in respect of funds that she claims are missing or have been dissipated or squandered while Mr. Turk was exercising control, exceeds £40 million.  (*Id.* at ¶ 4 and Exhibits A and B thereto.)

Mrs. İşbilen also has claims in the English Proceedings against several companies.  Each of these companies is connected with Mr. Turk, and is alleged to have received and to be liable to repay substantial amounts of Mrs. İşbilen's money or its traceable proceeds.  Those companies are (1) SG Financial Group Ltd, an English Company, with alleged receipts of at least £1,577,700.27 ("**SGFG**"); (2) Barton Group Holdings Limited, a company incorporated in the British Virgin Islands, with alleged receipts of at least US$9,032,569.86 and €5,387,000 ("**Barton**"); (3) Sentinel Global Asset Management Inc, a company incorporated in the Cayman Islands, with alleged receipts of at least US$5,469,842.52 and €981,625.38 ("**SGAM**"); (4) Sentinel Global Partners Limited, a company incorporated in the Cayman Islands, with alleged receipts of at least US$1,117,750 ("**SGP**"); and (5) AET Global DMCC, a company incorporated in the Cayman Islands, with alleged receipts of at least US$720,000 and €1,640,000 ("**AET Global**"), (7) Forten Holdings Limited, a company incorporated in Jersey, with alleged receipts (together with the Forten Limited and Hayman AI Ltd.) of at least £3,000,000 ("**Forten Holdings**"); (8) Forten Limited, a company incorporated in England (though currently dissolved pending restoration to the Register of Companies), with alleged receipts (together with Forten Holdings and Heyman AI Ltd.) of at least £3,000,000; and (9) Heyman AI Ltd, a company incorporated in England (though currently in compulsory liquidation), with alleged receipts of at least £3,769,000 and (with Forten Holdings and the Forten Limited) £3,000,000 ("**Heyman AI**").  Mr. Gary Bernard Lewis, a close associate of Mr. Turk, is also a defendant in the English Proceedings.  (*Id.* at ¶ 5 and Exhibits A and B thereto.)

Mrs. İşbilen intends to use the discovery obtained pursuant to this Application to support and provide evidence for her claims against Mr. Turk in the ongoing English Proceedings, to

identify where her money has gone for the purpose of assisting the English Court to identify assets for recovery, and to plead further claims in England.  (*Id.* at ¶ 9.)

## FACTUAL BACKGROUND

For many years, Mrs. İşbilen and her husband have been the victims of political persecution in Turkey by reason of their affiliation with the Gülen movement, which advocates a form of progressive Islam which includes active participation in democratic institutions.  (*Id.* at ¶ 11.)   In December 2015, Mrs. İşbilen's husband was imprisoned by Turkey's ruling AKP party regime. (*Id.*)  Mrs. İşbilen subsequently resolved to flee Turkey and to transfer her assets outside the jurisdiction. (*Id.*)  Mrs. İşbilen had no experience of moving assets internationally.  In those circumstances Mr. Turk, a former banker, was introduced to her as someone who could be trusted to assist.  (*Id.* at ¶ 12.)  In June 2017 Mrs. İşbilen successfully fled from Turkey to Greece.  She has since relocated to London where she has lived since February 2018.  (*Id.* at ¶ 13.)

Mrs. İşbilen alleges in the English Proceedings that she came to place her unreserved trust and confidence in Mr. Turk, that he made all of the practical and financial arrangements for her to leave Turkey, and that from September 2016 onwards he gradually came to assume almost total control over her financial affairs.  In granting Mr. Turk authority to move her assets out of Turkey, Mrs. İşbilen gave Mr. Turk specific, limited, and repeated instructions that she only wished to transfer her assets out of Turkey and to keep them safe, not to chase returns or speculate on risky investments.  (*Id.* at ¶ 14.)  Mr. Turk breached those instructions by carrying out a complex series of unauthorized and self-interested transactions over the course of many years.  (*Id.*)

In or around May and August 2020, Mrs. İşbilen demanded from Mr. Turk an accounting of her assets, but Mr. Turk failed to provide any response.  Mrs. İşbilen subsequently retained counsel in England to conduct an independent investigation of Mr. Turk's handling of her assets,

leading to the filing of the English Proceedings.  (*Id.* at ¶ 16.)  The primary purpose of the English Proceedings is to require Mr. Turk to account for where Mrs. İşbilen's remaining money is held, and where the rest of it has gone, so that she may take the necessary steps to recover those funds. (*Id.* at ¶ 17.)

Mr. İşbilen alleges in the English Proceedings that Mr. Turk took control of the proceeds of the Promissory Notes that were redeemed before August 2016, some US$37.5 million, and caused the bulk of those funds to be transferred to various entities connected with a purported Cayman investment fund, the 'Sentinel fund,' which Mr. Turk had established with Gary Bernard Lewis.  (*Id.* at ¶ 19.)  Mrs. İşbilen was the only so-called 'investor' in the 'Sentinel fund'.  Two other Defendants in the English Proceeding, SGAM and SGP purported to be the fund's 'investment manager', and its 'general partner,' respectively.  SGAM and SGP issued invoices for purported professional fees running to millions of dollars under cover of which they improperly received monies from the 'fund' and from Mrs. İşbilen directly.  (*Id.* at ¶ 20.)  The only long-term investment purportedly made by the 'Sentinel fund' was a €6-7 million investment in a Spanish technology company called Sphera Investment Spain SL.  (*Id.* at ¶ 21.)  Mrs. İşbilen has testified that she had no knowledge of the so-called 'Sentinel fund,' that the complex English documentation related to the fund and its entities was never explained or translated to her, and that she never agreed that any of the 'Sentinel' entities should receive substantial fees, let alone at the level they were purportedly charged.  (*Id*. at ¶ 22.)

The 'Sentinel fund' was purportedly dissolved in 2019.  Mr. Turk admits that some US$6.4 million of the remaining funds were transferred to a Delaware company, Bethlehem Investments LLC, which is the holding company for a Pennsylvania yogurt business, of which Mr. Turk and Mr. Lewis were the majority owners, and which is no longer trading.  Mrs. İşbilen asserts that she

was never told about this supposed 'investment,' and she seeks to locate all of the money transferred by Mr. Turk, his agents, and/or his affiliates to Bethlehem Investments LLC. (*Id.* at ¶ 23.)

The remaining capital of the 'Sentinel fund' was transferred (1) to SGAM, SGP or SGFG; (2) to other third parties; or (3) to bank accounts in Mrs. İşbilen's name which she alleges Mr. Turk opened and operated. (*Id.* at ¶ 24.) Ms. İşbilen alleges that Mr. Turk took control of the remaining 20 Promissory Notes (US$50 million) and arranged for their liquidation. Of these, 16 (US$40 million) were redeemed and the proceeds were deposited directly into a bank account in Mrs. İşbilen's name with YapiKredi Istanbul. (*Id.* at ¶ 25 and Exhibit C thereto.) The proceeds of these notes were then transferred on to other accounts in Mrs. İşbilen's name, with the exception of transfers totaling US$3 million made to an account in the name of a Sezgin Yildirim, whom Mr. Turk has claimed was a Turkish lawyer assisting with the redemption of the notes. (*Id.* at ¶ 26.) Four of the notes (US$10 million) remain unaccounted for. (*Id*. at ¶ 27.)

Mrs. İşbilen further alleges in the English Proceedings that Mr. Turk opened a number of bank accounts in Mrs. İşbilen's name, into which various amounts of Mrs. İşbilen's funds have been transferred. Mr. Turk is alleged to have procured a large number of unauthorized transfers to himself and third parties out of these accounts. Notably, custodian accounts were opened for Mrs. İşbilen with Raiffeisen Bank in Austria in the name of Swiss Global Asset Management AG, a Swiss entity of which Mr. Lewis is managing director and from which onward transfers were made to Mr. Turk and Barton. (*Id.* at ¶ 28.) Of the funds transferred to other entities under Mr. Turk's control, some were transferred on to further entities controlled by Mr. Turk. (*Id.* at ¶ 29.) Notably, some of the funds transferred to other Sentinel defendants were routed back to SGFG in London, which was a purported advisory business run by Mr. Turk and Mr. Lewis with receipts of

(at least) £1,577,700.27 directly or indirectly derived from Mrs. İşbilen.  (*Id.* at ¶ 30.)  Mr. Turk

has also applied large sums of money derived from Mrs. İşbilen to fund a start-up banking business

involving Heyman AI, Forten Limited, and Forten Holdings.  (*Id.* at ¶ 31.)

Mrs. İşbilen files this Application to obtain discovery for use in the English Proceedings to

determine where her funds, or their traceable proceeds, are now, and what they may have been

spent on.  (*Id.* at ¶ 32.)  Her specific requests for documentary discovery are set out below.

### DISCOVERY REQUESTS FOR CORRESPONDENT BANKING RECORDS

Mrs. İşbilen seeks documentary discovery of correspondent banking records, comprising

detailed SWIFT and other transaction data for transactions made to or from Mrs. İşbilen's own

accounts and known or suspected accounts held by the Defendants to English Proceedings, or their

affiliates or agents.  The banks from which correspondent banking records are sought, each of

which have branch offices and/or headquarters in this District are:

     a.  Standard Chartered Bank

     b.  Citigroup d/b/a Citibank

     c.  The Bank of New York Mellon Corporation

     d.  Bank of America N.A.

     e.  JP Morgan Chase Bank N.A.

     f.  Goldman Sachs and Co.

     g.  Deutsche Bank A.G.

     h.  Deutsche Bank Trust Company Americas

     i.  HSBC Bank

     j.  Societe Generale

The banks listed above are collectively referred to herein as the "Correspondent Banks." (*Id.* at ¶ 33.)

First, in connection with transfers of funds to or from accounts in Mrs. İşbilen's name, Ms. İşbilen requests the following materials from each of the Correspondent Banks from August 1, 2016 to the date on which discovery is provided:

  a.  All documents relating to transfers emanating from an account in the name of "Sezgin Yildirim" to any account with Raiffeisen Bank in Vienna, Austria in the name of Swiss Global Asset Management AG and/or Mrs. İşbilen (including accounts with IBAN AT153100017056136195 and AT673100008356136195). (*Id.* at ¶ 35.a)

  b.  All documents relating to any dollar-denominated transfers emanating from accounts in the name of Mrs. İşbilen and made to accounts in the name of Sentinel Global Partners Ltd or Sentinel Global Partners (Mauritius) Ltd. (*Id.* at ¶ 35.b)

  c.  All documents relating to any dollar-denominated transfers emanating from accounts in the name of Mrs. İşbilen and made to accounts in the name of "AET Global" or "AET Global DMCC" anywhere in the world. (*Id.* at ¶ 35.c)

Secondly, as regards the unaccounted-for promissory notes, Mrs. İşbilen seeks production from each of the Correspondent Banks, from August 1, 2016 to the date on which discovery is provided, of all documents relating to any US dollar-denominated transactions in the amount $2.5, $5, $7.5 or $10 million out of the Turkiye Is Bankasi AS account of the Evyap Soap Oil and Glycerin Company (*Evyap Sabun Yag Gliserin Sanayi*) with IBAN TR030006400000212540021580. This account transferred the proceeds of other promissory notes. (*Id.* at ¶ 36.a and Exhibit C thereto.)

Mrs. İşbilen's remaining requests concern correspondent banking records that relate to accounts in the names of other Defendants to the English proceedings, each of which have also received very large sums of Mrs. İşbilen's money or its traceable proceeds. (*Id.* at ¶ 37.) Mrs. İşbilen understands that Barton has received payments from various accounts totaling over $9

million and €5 million.  Mr. Turk is a director and sole shareholder of Barton and held a power of attorney over its account with Varengold Bank, as confirmed by letter dated 18 March 2021.  (*Id.* at ¶ 38 and Exhibit D thereto.)  Mrs. İşbilen accordingly seeks discovery from the Correspondent Banks of all documents relating to any US dollar-denominated transactions over $1000 emanating from any account in the name of "Barton Group Holdings."   (*Id.* at ¶ 38-39.)

With respect to Mr. Turk, Mrs. İşbilen has identified bank accounts in Mr Turk's name in relation to which she has no information (including accounts with Turkiye Garanti Bankasi and AKBank numbered IBAN TR240006200034000009066828 and IBAN TR410004600116001000106210). (*Id.* at ¶ 39.)  Accordingly, Mrs. İşbilen seeks documents from the Correspondent Banks relating to any US dollar-denominated transactions above $1,000 into and out of any account in the name of Selman Turk, or Selman Turk and others.  (*Id.* at ¶¶ 40-41.)

With respect to the 'Sentinel fund' and related entities, Mrs. İşbilen seeks SWIFT messages or other transaction data which might identify the onward recipients of funds, for the following accounts:  (i) an account in the name of "Sentinel Global Asset Management Inc" (SGAM) held with Varengold in Germany (account number 1115450115); (ii) three accounts in the name of "Sentinel Global Asset Management Inc" (SGAM) (denominated in USD, GBP and EUR), held with DMS Bank in the Cayman Islands (account numbers 01829100, 01829101 and 01829102 respectively); (iii) two accounts in the name of "Sentinel Global Fund A LP" (denominated in USD and EUR), held with Varengold in Germany (IBAN: DE68200301331115850214 and DE79200301331115850113 respectively); (iv) three accounts in the name of "Sentinel Global Fund A LP" (denominated in USD, GBP and EUR) held with DMS Bank in the Cayman Islands (account numbers 01853100, 01853101 and 01853103 respectively); and (v) three accounts in the name of "Sentinel Global Partners Ltd" (denominated in USD, GBP and EUR) held with DMS

Bank in the Cayman Islands (account numbers 02060100, 02060101, and 02060102).  (*Id.* at ¶ 42.)
Mrs. İşbilen is also aware of an account in the name of "Sentinel Global Partners Ltd" held with
ABC Banking Corp Ltd in Mauritius (IBAN MU18ABCK2702801003185402000).  (*Id.* at ¶ 43.)
Further, Mrs. İşbilen suspects that other accounts were also operated by Sentinel entities.  (*Id.* at ¶
44.)  Accordingly, Mrs. İşbilen seeks from the Correspondent Banks all documents relating to any
US dollar-denominated transactions over $1000 into or out of any accounts in the names of
"SENTINEL FUND", "SENTINEL FUND A LP", "SENTINEL GLOBAL FUND", "SENTINEL
GLOBAL ASSET MANAGEMENT", "SENTINEL GLOBAL ASSET MANAGEMENT, INC",
"SENTINEL GLOBAL PARTNERS","SENTINEL GLOBAL PARTNERS LIMITED",
"SENTINEL GLOBAL PARTNERS (UK) LIMITED", "SENTINEL GLOBAL ADVISERS",
"SENTINEL GLOBAL ADVISERS LIMITED", "SG FINANCIAL GROUP", "SG FINANCIAL
GROUP LIMITED", "SENTINEL GHANA", and "SG SASKI LTD."  (*Id.* at ¶ 45.)

 With respect to AET Global, Ms. İşbilen has identified at least US$720,000 and €1,640,000
to which she has a claim that was transferred to AET Global.  She is also aware of accounts in the
name of AET Global with Emirates Islamic Bank PJSC in Dubai and Varengold Bank in Germany
and believes that additional onward transfers from AET Global's accounts may have been made.
(*Id.* at ¶ 46.)  Accordingly, Mrs. İşbilen seeks from the Correspondent Banks all documents relating
to any US dollar-denominated transaction over $1,000 into or out of each AET Global's accounts
with Emirates Islamic Bank PJSC (IBAN: AE320340003527635336202 and
AE050340003527635336203) and Varengold Bank (collection numbers 1115580214 and
1115580116), and from any other accounts in the name of "AET GLOBAL" or "AET GLOBAL
DMCC".  (*Id.* at ¶ 47.)

With respect to Softco Consultants FZE, Ms. İşbilen alleges that Mr. Turk procured that a transfer to that entity of $1.25 million from the 'Sentinel fund' on Mrs. İşbilen's behalf.  The purpose of the payment is unclear, and there is a dispute in the English Proceedings about whether it was requested; Mrs. İşbilen has testified that she had no knowledge of it whatsoever.  Softco Consultants FZE appears to be incorporated in the Ajman Free Zone in the United Arab Emirates, with which Mrs. İşbilen has no connection.  Mrs. İşbilen wishes to ascertain what became of these funds.  (*Id.* at ¶ 48.)  Transfers may have been made to accounts with Emirates NBD Bank PJSC, Dubai Marina Branch (IBAN: AE070260001015441042801, AE150260001025441042802, AE850260001025441042803, and AE580260001025441042804).  (*Id.* at ¶ 49.)  Accordingly, Mrs. İşbilen requests from the Correspondent Banks all documents relating to any US dollar-denominated transaction over $1,000 into or out of each of the accounts numbered IBAN: AE070260001015441042801, AE150260001025441042802, AE850260001025441042803, and AE580260001025441042804 in the name of "SOFTCO CONSULTANTS FZE".  (*Id.* at ¶ 50.)

With respect to Heyman AI, Forten Limited, and Forten Holdings Mrs. İşbilen alleges that Forten Holdings and/or Forten Limited also received Mrs. İşbilen's funds or their traceable proceeds.  Mrs. İşbilen has no records for accounts in the names of these entities, and suspects that Heyman AI may have operated further accounts.  (*Id.* at ¶ 51.)  Accordingly, Mrs. İşbilen requests from the Correspondent Banks all documents relating to any US dollar-denominated transfers over $1000 into or out of any account in the names of "HEYMAN AI", "HEYMAN AI LIMITED", "FORTEN LIMITED", "FORTEN HOLDINGS" or "FORTEN HOLDINGS LIMITED", excluding any transfers to or from accounts in the name of Heyman AI Limited with Lloyds Bank, National Westminster Bank, Revolut, and Credit Suisse.  (*Id.* at ¶ 52.)

With respect to Mr. Turk and Mr. Lewis' US yogurt business, Mrs. İşbilen requests from the Correspondent Banks all documents relating to any US dollar-denominated transfers over $1,000 into or out of any account in the names of "BETHLEHEM INVESTMENTS LLC", "LTH NATURAL GOODS LLC", "NATURLICH LLC", and "PENN DAIRY LLC." (*Id.* at ¶ 54.) And with respect to Sphera Investment Spain SL, Mrs. İşbilen requests from the Correspondent Banks all documents relating to any US dollar-denominated transfers over $1,000 into or out of any account in the name of "SPHERA INVESTMENT SPAIN SL". (*Id.* at ¶ 55.)

Finally, Mrs. İşbilen requests from the Correspondent Banks all documents relating to any US dollar-denominated transfers over $1,000 emanating from accounts in the name of "STURDIOUS" (an entity to which unexplained payments appear to have been made, but for which Mrs İşbilen does not have detailed records), including under Varengold account number 1116320118. (*Id.* at ¶ 56 and Exhibit E.)

M&T Bank Corporation ("**M&T Bank**") is a New York-based bank incorporated in Buffalo, New York, with branches in this district and with which relevant accounts are or were held by Mr. Turk's and Mr. Lewis's US yogurt business which admitted to have received at least $6,400,000 from funds redeemed from the 'Sentinel fund,' namely Bethlehem Investments LLC and its current or former subsidiaries, which include or have included LTH Natural Foods LLC, Naturlich LLC, and Penn Dairy LLC. (*Id.* at ¶ 57.) Some or all of these entities are known or suspected to have held accounts with M&T Bank under account numbers 000009853445295, 00009853445261, 00009853445287, 00009853445188, 00009853445279, and 00009853444819. (*Id.* at ¶ 58.) Mrs. İşbilen seeks discovery from M&T Bank of complete banking records for each of these accounts, including comprehensive account statements, detailed transaction information (including, e.g., SWIFT messages), cash/cheque deposit slips, and account opening forms. She

also requests that a reasonable search be made for equivalent records belonging to other accounts in the names of these entities.  (*Id.* at ¶ 59.)

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits the United States District Courts to grant discovery for use in a foreign proceeding.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .  The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782.  The goals of this statute are twofold: "to provide equitable and efficacious discovery procedures in the United States courts for the benefit of tribunals and litigants involved in litigation with international aspects . . .  and to encourage foreign countries to provide similar means of assistance to [United States] courts."  *Lancaster Factoring Co. Ltd. v. Mangone.* 90 F.3d 38, 41 (2d Cir. 1996) (internal quotations and citations omitted).  "In pursuit of these twin goals, the section has, over the years, been given increasingly broad applicability."  *Id.* (internal quotations and citations omitted).

When a court finds that the statutory requirements of 28 U.S.C. § 1782 are met, it may, in its discretion, grant an application for discovery.  The United States Supreme Court has articulated a number of factors the district courts should consider when weighing an application under Section 1782.  As set forth in greater detail below, all these discretionary factors weigh in favor of granting Petitioner the requested discovery.

## I.    PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts are authorized to grant an application made pursuant to 28 U.S.C. § 1782 where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before

a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. 1KB Deutsche Industriebank AG,* 673 F.3d 76, 80 (2d Cir. 2012).  Petitioner's application satisfies all three statutory requirements.

**First**, M&T Bank and each of the Correspondent Banks resides or is found in this District. Tickner Decl. at ¶¶ 33 and 57.  Petitioner seeks records that should be held in M&T Bank's and each of the Correspondent Banks' ordinary course of business and which M&T Bank and each of the Correspondent Banks should be able to easily produce in this District.

**Second**, the discovery sought is for use in a pending foreign proceeding.  To the extent that the requested discovery identifies assets properly belonging to Mrs. İşbilen, Petitioner intends to use that discovery in the English Proceedings to recover those assets and or to identify where those assets might be found.  *See, e.g.*, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).  Tickner Decl. ¶¶ 9, 17, 32.

**Third**, Petitioner is an "interested person" authorized to bring this application as Mrs. İşbilen was the victim of the fraud that is the subject matter of the English Proceeding and is seeking to recover the assets misappropriated from her by Mr. Turk, his agents, and/or associates. *Id.* ¶¶ 4-5; *see Intel Corp.*, 542 U.S. at 256.

## II.     THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER

"Once the statutory requirements [of 28 U.S.C. § 1782] are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (internal quotations and citation omitted).  The Supreme Court has identified a number of factors that the district courts are to consider in ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an

attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome.  *See Intel Corp.*, 542 U.S. at 264-65; *Brandi-Dohrn*, 673 F.3d at 80-81.  Here, all of these factors weigh in favor of granting Petitioner's application.

First, where, as here, discovery is sought from entities that would not participate in the contemplated foreign proceeding, the need for court-ordered discovery is apparent.  As the Supreme Court explained, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel Corp.*, 542 U.S. at 264 (internal citations omitted).

The second factor identified by the Supreme Court—the nature of the foreign proceedings and the receptivity of the foreign tribunal to federal court assistance—requires courts to consider "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal."  *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (internal citations omitted).  In weighing these elements, courts may only rely on "authoritative proof." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).  Here, the Petitioner has duly informed the court overseeing the English Proceedings, and that court has expressly permitted the bringing of the application.

Following from this, the third factor also suggests that discovery should be granted, as this application is clearly not an attempt to circumvent any foreign proof-gathering restrictions.  "[T]he burden is on the opponent of a § 1782 request to prove that the foreign court would reject the

14

evidence obtained through § 1782." *In re Application of Hornbeam Corp.*, No. 14 Misc. 424 (VSB), 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014); *see also Euromepa*, 51 F.3d at 1099-1100 ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."). The discovery sought here pertains specifically to tracing the Petitioner's misappropriated assets, and, as the English Court is informed of and has allowed this application to go forward, there is no reason to believe that the anticipated discovery would violate any foreign restrictions on evidence gathering.

Finally, this application is not burdensome. Bank records are routinely sought for and produced via § 1782 petitions. *See, e.g., Hornbeam Corp.*, 2014 WL 8775453, at *5 (ordering production of bank records, including wire transfers, pursuant to § 1782); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp.2d 434, 437-39 (S.D.N.Y. 2011) (granting § 1782 petition seeking disclosure of account statements, account opening materials, customer files, and due diligence materials).

## III.    THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*

The Court should grant Petitioner's application *ex parte*. *Ex parte* applications under 28 U.S.C. § 1782 are routine in this district. *See In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, 15-mc-417 (LAK), 2016 WL 702327, at *5 (S.D.N.Y. Feb. 18, 2016); *In re Application of Gorsoan Ltd. and Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 Misc. 397(PGG), 2014 WL 7232262, at *5 (S.D.N.Y. Dec. 10, 2014). As noted by Judge Kaplan:

> Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte*. Where, as here, the application is for the issuance of subpoenas, no substantial rights of the

subpoenaed person are implicated by such action, as the subpoenaed person, once
served, is entitled to move to quash or modify the subpoenas.

*In re Chevron Corp.,* No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010) (Dkt. 2). Neither the

Correspondent Banks nor M&T Bank will be prejudiced by granting Petitioner's application *ex*

*parte* as they will have an opportunity to challenge the discovery Petitioner is seeking once it is

served.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court endorse the

Proposed Order filed with the *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to

Conduct Discovery for Use in Foreign Proceedings ("Application"), to serve the subpoenas

annexed to the Application as Exhibits A-K.

Dated: February 22, 2022
      New York, New York

                    **BAKER & HOSTETLER LLP**

                    */s/ Oren J. Warshavsky*
                    Oren J. Warshavsky
                    owarshavsky@bakerlaw.com
                    Gonzalo S. Zeballos
                    gzeballos@bakerlaw.com
                    Michelle R. Usitalo
                    musitalo@bakerlaw.com
                    45 Rockefeller Plaza
                    New York, NY 10111
                    Telephone: 212-589-4200
                    Facsimile: 212-589-4201